IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **Morris C. Dorsey, Jr.,** ) | | |
| (address to be filed under seal), ) | Case No._____ | |
| ) | | |
| Plaintiff, ) | Judge_____ | |
| ) | | |
| v. ) | **COMPLAINT FOR DAMAGES** | |
| ) | **PURSUANT TO THE TERRORISM** | |
| **Islamic Republic of Iran ("IRAN"),** ) | **EXCEPTION TO THE JURISDICTIONAL** | |
| Ministry of Foreign Affairs ) | **IMMUNITY OF A FOREIGN STATE,** | |
| Khomeini Avenue ) | **28 U.S.C. § 1605A(a)(1) *ET SEQ.*** | |
| United Nations Street ) | | |
| Tehran, Iran. ) | | |
| ) | | |
| Defendant. ) | | |

NOW COMES the Plaintiff, *Morris C. Dorsey, Jr.*, and for his Complaint against the Defendant hereby alleges and avers as follows:

**THE PARTIES, AND STATEMENT OF THE CASE**

1. The Plaintiff, Morris C. Dorsey, Jr., is a real person residing in the State of Alabama. Mr. Dorsey was a United States Marine that was one of the very few Marines that was in the Marine barracks in Beirut, Lebanon that survived the suicide terrorist bombing. He was awarded two (2) Purple Hearts.

2. On Oct. 23, 1983, in Beirut, a first suicide bomber detonated a truck bomb at the building serving as the barracks for the 1st Battalion 8th Marines (Battalion Landing Team – BLT 1/8), killing 220 United States Marines, 18 sailors, and 3 soldiers, making this incident the deadliest single-day death toll for the United States Marine Corps since the Battle of Iwo

Plaintiff's Complaint - 1

1 - 1 -

Jima in World War II, the deadliest single-day death toll for the United States Armed Forces since the first day of the Tet Offensive in the Vietnam War, the deadliest terrorist attack on American citizens overseas, and the deadliest terrorist attack ever after 9/11. The explosives used were later estimated to be equivalent to as much as 9,500 kg (21,000 pounds) of TNT. The Plaintiff, Mr. Dorsey, was one of two (2) of approximately twenty (20) Marines whom were sleeping in their bunks on the fourth floor of the barracks when the bomb exploded.

3. An image of the barracks before the bomb:



4. An image of Plaintiff, Mr. Dorsey, literally being taken out of the rubble of the barracks approximately four (4) hours after the bombing:



5. The left side of Plaintiff's head was badly injured, part of his brain was swollen and exposed, his left eye was detached, his eardrums were blown out, both of his legs were shattered, and

they believed he would never survive the first night.  He did however survive, and he has suffered to this day from his most severe personal injuries.

6. The Defendant, The Islamic Republic of Iran ("Iran"), has been designated by the United States of America, since January 19, 1984, as a "State Sponsor of Terrorism."  Countries determined by the Secretary of State to have repeatedly provided support for acts of international terrorism are designated "State Sponsors of Terrorism" pursuant to three laws: Section 6(j) of the Export Administration Act, Section 40 of the Arms Export Control Act, and Section 620A of the Foreign Assistance Act.

7. The Defendant's Iranian Ministry of Information and Security, is an agency of the Defendant, whose activities included, at times relevant to this action, the prosecution of terrorist acts directed against the armed forces of the United States and United States' citizens, by and through material support to various terrorist organizations including, but not limited to, the Lebanese terrorist organization known as "Hezbollah."

## JURISDICTION AND VENUE

8. This is an action for personal injuries suffered by Plaintiff, who at the time of the injury was on a peacekeeping mission (they were in Lebanon in peace) and not during war time engagement.

9. The Court has subject matter jurisdiction because this case is filed in United States federal district court pursuant to diversity jurisdiction under 28 USC § 1332 *et seq*., and the amount in controversy exceeds $75,000.

10. This Court has subject matter jurisdiction over the foreign state Defendant pursuant to the terrorism exception to the jurisdictional immunity of a foreign state, 28 USC § 1605A.

11. This Court has personal jurisdiction over the Defendant because Defendant is a state sponsor of terrorism, which terrorism caused the Plaintiff to suffer personal injuries.

12. Venue is typically a matter of Plaintiff's choice, unless the Defendant disputes venue or requests a transfer of venue.  Unlike jurisdictional defenses, improper venue is an affirmative defense that is waived if not raised by the Defendant.  The Defendant, having no connection to the United States in virtually any form, can expect to have lawsuits prosecuted against it in just about any United States federal courthouse, including in Akron, Ohio.  Additionally, Plaintiff herein was the best friend of Michael C. Spaulding, deceased, whose family previously litigated a similar case in this district against this Defendant, see: *Spaulding v. Iran* (ND Ohio 2018), Case No. 5:16-cv-1748, Judge Sara Lioi.  Plaintiff was sleeping just a few bunks down from Mr. Spaulding, deceased, when the bomb exploded.  The first thing Plaintiff yelled after he realized he may still be alive was "Spaulding," calling for his friend.  There was no answer.

## FACTUAL ALLEGATIONS

13. A group calling itself "Islamic Jihad' claimed responsibility for the bombings.

14. Upon information and belief, the chain of command to Islamic Jihad ran from the government of Iran, to Iran's Ambassador to Syria, to Iranian Revolutionary Guard Corps' commander Hossein Dehgan in Beirut.

15. In 2004, the Iranian government erected a monument in Tehran, Iran to commemorate the 1983 Beirut barracks bombings and its "martyrs."  The government of Iran is apparently proud of the suicide bombers.  See image:



16. Civil lawsuits have previously been filed in federal courts against Iran for wrongful death stemming from the Beirut barracks bombings, see, e.g., *Deborah D. Peterson, Personal Representative of the Estate of James C. Knipple, et al. v. The Islamic Republic of Iran, et al*. (U.S. District Court for the District of Columbia, Case No. 01-2684, Judge Royce C. Lambert); see, also, *Spaulding v. Iran, supra*.

17. Default judgments have been taken against Iran in *Peterson* and *Spaulding* and similar cases.

18. Plaintiff is entitled to judgment against the Defendant.

### CLAIM NO. 1
*(Claim for Damages from Personal Injuries suffered from a State-Sponsored Terrorist Act)*

19. The Plaintiff hereby incorporates hereinto this claim, by reference, each statement, whether written above or below, as if each is fully re-written herein.

20. 28 USC § 1605A(a) provides a terrorism exception to the jurisdictional immunity of a foreign state.

21. Under 28 USC § 1605A(b), an action may be brought or maintained under this section if the action is commenced, or a related action was commenced not later than the latter of 10 years

after April 24, 1996. *Id.* at (b)(1). However, statute of limitations defenses are affirmative defenses under the law that are waived if not raised by the Defendant. U.S. district courts have "no *obligation* to raise the time bar *sua sponte*." *Day v. McDonough*, 547 U.S. 198, 205, 126 S. Ct. 1675, 164 L. Ed. 2d 376 (2006) (emphasis in original; citations omitted). See, also, *Owens v. Republic of Sudan*, 864 F.3d 751, at 804 (finding that "the limitation period in § 1605A(b) is not jurisdictional[]" and that, "by failing to raise it in the district court[,]" defendant forfeits the defense).

22. The *Peterson and Spaulding, supra*, litigations, are related actions to this case, and Peterson was commenced in 2002, which was not later than 10 years after April 24, 1996. As such, this action is timely commenced within the statute of limitations imposed under 28 USC § 1605A(b)(1). Further, the issue itself is one that is typically raised if not waived.

23. 28 USC § 1605A(c)(2) provides for a private right of action against foreign states that sponsor terrorism, which cause harm to members of the armed forces. 28 USC § 1605A(c)(4) provides that such private rights of action can be commenced … by the person injured or killed by terrorism, which is the fact present in this case.

24. The Plaintiff in this action, who was a member of the U.S. armed forces, and whom was badly injured by the terrorist attack upon the headquarters building on October 23, 1983.

25. Hezbollah is an organization of Lebanese Muslims who are adherents of the Shiia or Shiite faction of Islam. It represents itself as an Islamic freedom fighting movement which views any part of the Near East under the control of the State of Israel as occupied land. It advocates the expulsion of the United States from the Near East and is committed to violent action to that end and to the termination of the existence of Israel.

26. At all times relevant to this action, Hezbollah was being given extensive support by the Defendant which permitted it to carry out a wide ranging program of terrorism against the United States and the State of Israel and a social welfare program designed to garner political support amongst the Shiite population of Lebanon.

27. In 1983, at the time of the acts giving rise to this Complaint, Hezbollah was under the complete operation control of the Defendant's Iranian Revolutionary Guards units within Lebanon.

28. The Shiia or Shiite Community in Lebanon had been economically depressed for an extended period of time prior to the date of the occurrence and was further disadvantaged by a level of education far below that of other major groups within Lebanon.

29. The provision of extensive economic support by the Defendant to Hezbollah was necessary for that organization to carry out a terrorist attack of the scope and technological sophistication of the attack of October 23, 1983.

30. The mission of the Marines in Beirut were to establish the stability necessary for the Lebanese government to regain control of their capital.  The unit operated under normal, peacetime rules of engagement.

31. Acting on instructions from the Defendant, the Iranian agents of the Defendant in operational control of Hezbollah, with high level technical participation which would not have been available to Hezbollah in the absence of Iranian control and participation, carried out the construction of an enhanced explosive device with a tremendous explosive force.

32. This was mounted in a large truck of a type commonly seen on construction projects which had been determined by Iranian terrorist experts to have sufficient weight to crash through an

outer barbed wire emplacement, yet would fit between two sandbagged sentry posts, then penetrate through an iron fence gate, climb over a sewer pipe obstruction and through a sandbag inner barrier obstruction into a passenger entry hallway into the center lobby of the building to a position at which Iranian explosive experts had calculated an explosion of the magnitude to be produced by the device would collapse the structure.

33. At approximately 6:22 a.m., Beirut time, on October 23, 1983, the attack was carried out exactly in the complex manner planned by the Iranian agents, producing the results which their calculations had led them to expect.

34. The collapse of the four story, reinforced concrete structure resulted in the deaths of approximately 241 members of the U.S. Armed Forces, including the severe injuries to the Plaintiff, Mr. Dorsey.

35. The actions of the agents of the Defendant set forth above constituted acts of torture, extrajudicial killing, and the provision of material resources for these acts as defined in Section 2339A, Title 18, U.S. Code.

36. The formation of Hezbollah and its emergence as a major terrorist organization was the product of direct intervention by Iranian operatives, including the Iranian Revolutionary Guards, the Ministry of Information and Security and Ali Akbar Mohtashemi, acting as Interior Minister of the Defendant, The Islamic Republic of Iran, and the Iranian Ambassador to Syria.  The above activities of Hezbollah were financed, technologically supported, and commanded by the Defendant.

37. The Defendant's sponsorship of terrorism was a direct and proximate cause of Mr. Dorsey tremendous injuries.

38. The Plaintiff has suffered damages as a result of Defendant's terrorism.

39. As a direct and proximate result of the terrorist act, the Plaintiff has suffered loss of mental anguish and tremendous pain and suffering, and is permanently and totally disabled. The Plaintiff has been determined 100% disabled per both the United States V.A. and Medicare.

## **PRAYER FOR RELIEF / REQUEST FOR REMEDIES**

WHEREFORE, the Plaintiff prays that this Court enter an Order against the Defendant as follows:

A) Fifteen Million Dollars ($15,000,000.00) compensatory damages to the Plaintiff;

B) An assessment of interest on the damages so computed;

C) An award of attorney's fees and costs;

D) Damages according to each cause of action herein;

E) Prejudgment interest; and

F) Any such other relief in law or equity that this honorable Court deems just and proper.

1
2                          Most Respectfully Submitted,
3
4                          __s/ David A. Welling_____
                           **DAVID A. WELLING (0075934) (lead counsel)**
5                          **C. VINCENT CHOKEN (0070530)**
                           CHOKEN WELLING LLP
6                          55 S. Miller Rd., Ste. 203
                           Akron, Ohio 44333
7                          Tel.   (330) 865 – 4949
8                          Fax   (330) 865 – 3777
                           davidw@choken-welling.com
9                          vincec@choken-welling.com
10
                           **JOHN D. GUGLIOTTA (0062809)**
11                          3020 W. Market St., Ste. C
                           Fairlawn, Ohio 44333
12                          Tel.   (216) 696 – 1422
                           Fax   (216) 696 – 1210
13                          johng@inventorshelp.com
14
                           *Counsel for the Plaintiff, Morris C. Dorsey, Jr.*
15
16
17
18
19
20
21
22
23
24
25
26

Plaintiff's Complaint - 10

10       - 10 -